UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____  :
UNITED STATES OF AMERICA             :
                                     :   Crim. No. 16-00036 (NLH)
     v.                              :
                                     :
ROBERT G. PELLE,                     :   **OPINION**
                                     :
          Defendant                  :
_____  :


**APPEARANCES**:

LORI M. KOCH
FEDERAL PUBLIC DEFENDER'S OFFICE
800-840 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

     *Counsel for Robert G. Pelle*

SARA ALIYA ALIABADI
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
CAMDEN FEDERAL BUILDING U.S. COURTHOUSE
P.O. BOX 2098
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101

     *Counsel for the United States*


**Hillman, District Judge**

     Before the Court are Robert Pelle's ("Defendant") Motions

for Reduction of Sentence under the First Step Act, 18 U.S.C. §

1

3582(c)(1)(A).  (ECF 26, 28).  For the reasons expressed below, Defendant's Motions will be denied.

**Background**

On January 28, 2016, Defendant appeared before the Honorable Jerome B. Simandle and entered a guilty plea to possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).  (See ECF 21, 30).  At the time that Defendant committed the above offense, he was on federal supervised release for another child pornography charge.[1]  (ECF 30).

On March 6, 2017, Judge Simandle sentenced Defendant to 120 months imprisonment, followed by lifetime supervision.  (ECF 24).  This sentence was to run consecutively with the 12-month sentence Judge Simandle separately imposed for Defendant's violation of the terms of his supervised release. (See Crim. No. 05-cr-407-JBS, ECF 92).

Defendant originally moved before this Court for compassionate release in a motion filed on January 6, 2021 (the "First Motion"). (ECF 26).  Defendant followed up with an

---

[1] In that case, Defendant was convicted of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and conspiracy to transport a minor in interstate commerce with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and (e). (See Crim. No. 05-cr-407-JBS, ECF 65). Defendant was sentenced to 72 months of imprisonment and a term of 5 years supervised release.  (Id.)

2

amended motion (the "Amended Motion") on February 22, 2021. (ECF 28). The Government filed a letter brief in opposition to the Motions on March 8, 2021 (the "Opposition"). (ECF 30).

Defendant contends that he has exhausted his administrative remedies (ECF 28 at 2), which the Government does not contest (ECF 30 at 4).

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." <u>United States v. Pabon</u>, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**<u>Discussion</u>**

1. **<u>Defendant has satisfied the exhaustion requirements</u>**

Defendant has fully exhausted his administrative rights in this case after applying to the warden of FCI Otisville on July 27, 2020 and November 13, 2020. (ECF 28 at 2). Defendant never received a response from the warden. (<u>Id</u>.) The Government agrees that Defendant has exhausted his administrative remedies (ECF 30 at 4), as required by the statute.

2. **<u>Defendant fails to establish "extraordinary and compelling" reasons for his release</u>**

Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. Specifically, Defendant argues that he is at an increased risk for severe illness and death if he contracts COVID-19 due to his underlying health conditions. (ECF 28 at 1). According to his Amended Motion, he suffers from hypertension, hyperlipidemia,

4

obesity, and cardiac arrythmia.[2] (Id. at 3). To manage these conditions, Defendant "is prescribed a daily regimen of Aspirin, Atorvastatin (40 mg.), Famotidine (40 mg.), Furosemide (40 mg.), Metoprolol Tartrate (50 mg.) twice daily, and Sertraline HCL (Zoloft)(25 mg. day)." (Id. at 3-4).

Defendant argues the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement together constitute extraordinary and compelling reasons sufficient to reduce his prison sentence. (ECF 28). Defendant points to studies that indicate that hypertension and obesity are correlated with worse outcomes for individuals who contract COVID-19 compared to those who do not have underlying conditions. (Id. at 4-6). Defendant argues that his age, 56 at the time of this Opinion, puts him at a higher risk of severe disease or death if he contracts COVID-19. (Id. at 5-6). He also argues that crowding and lack of social distancing at FCI Otisville puts him at a higher risk of infection, stating "[a]pproximately 531 individuals live in FCI Otisville, in large dormitories with rows of bunks less than three feet apart." (Id. at 6). Defendant suggests that prisons in general are more dangerous in terms of contracting COVID-19 and that the BOP's

---

[2] The First Motion erroneously indicated that Defendant also suffered from heart disease. (ECF 26 at 3, 30 at 2 n.1).

5

efforts to mitigate transmission have been inadequate as evidenced by rising case numbers.  (Id. at 6-10).

The Court does not find that Defendant presents "extraordinary and compelling" reasons for his release.[3]  The Court takes seriously Defendant's concerns about the effect of COVID-19 on his health and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly.  That said, the Court holds that Defendant has not met that standard.  First, the Court finds instructive, although

---

[3] The Government concedes that Defendant has presented "extraordinary and compelling" reasons for his release because of the nature of his medical conditions.  (ECF 30 at 4).  As further explained below, the Court finds this position to be inconsistent with other courts that have held that conditions similar to those of Defendant did not meet the standard under 18 U.S.C. § 3852(c)(1)(A) or the guidance under U.S.S.G. § 1B1.13, cmt. n.1(A).  See United States v. Tirado, 2021 WL 5565165, at *1 (7th Cir. Nov. 29, 2021) (affirming the district court's determination that asthma and cardiac arrythmia were not "extraordinary and compelling" reasons justifying the defendant's release); United States v. Hester, 2020 WL 5535010, at *1 (M.D. Ala. Sept. 15, 2020) ("underlying health conditions such as Arrythmia, Cardiac Dysrhythmia Disorder of the heart, high cholesterol, chronic debilitating migraine headache (sic) with Grand Mal seizures, and constant phlegm buildup in [the] lungs due to mold and mildew" did not present "extraordinary and compelling" reasons justifying release where the defendant's conditions were adequately managed by the jail); United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues.").

6

not determinative,[4] the current guidance by the Sentencing Commission as incorporated by § 3582(c).  Defendant's medical conditions, while chronic, are not of the sort that militate toward release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines.  U.S.S.G. § 1B1.13, cmt. n.1(A).  While the Court agrees that Defendant's medical conditions are chronic, it cannot say that it falls into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances."  Id.  It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which

---

[4]  While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different. As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

he...is not expected to recover." Id.  Defendant has not shown that he cannot care for himself.  To the contrary, he appears to be adequately managing his conditions with medication and oversight from the medical team at FCI Otisville (ECF 28 at 3-4) (listing the medications that he receives to manage his conditions while incarcerated).  In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant's medical conditions, even with the possibility of contracting COVID-19, warrant his release.

Additionally, FCI Otisville's mitigation efforts at controlling the spread of the coronavirus appear to be effective.  Currently, FCI Otisville has three (3) active inmate positive tests and two (2) staff positive tests.[5]  Over the course of the pandemic, no inmates or staff have died as a result of infection by COVID-19, and 343 inmates have recovered from positive infections.[6]  Id.

Defendant's vaccination status is unsurprisingly unclear, given that the briefing was completed prior to the vaccines being widely available.  However, according to the BOP, 656

---

[5] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited April 14, 2022).

[6] Id.

inmates at FCI Otisville have been fully vaccinated.[7][8] Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Otisville weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Otisville, does not present "extraordinary and compelling" reasons supporting his release. The effective management of his health conditions through medication and FCI Otisville's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an

---

[7] Id.

[8] The BOP lists the current inmate population at FCI Otisville as 591. FEDERAL BUREAU OF PRISONS, FCI OTISVILLE, https://www.bop.gov/locations/institutions/otv/ (last visited April 14, 2022). Regardless of whether the discrepancy between the total number of inmates (591) and total number of inmate vaccinations (656) is due to a decrease in the prison population during the course of the vaccination campaign, it is clear that vaccinations are occurring at a high rate.

inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

Defendant readily admits that "the receipt, possession, and distribution of child pornography is abhorrent and Mr. Pelle's actions evidence a significant history of engaging in this conduct." (ECF 28 at 13). Defendant does not argue that anything has changed in the application of the § 3553(a) factors to his case, but rather that "the seriousness of the pandemic and the availability of alternative means of observing Mr. Pelle's conduct weigh in favor of compassionate release." (Id. at 14). This argument does not tilt a full balancing of the § 3553(a) factors in his favor.

The Government argues that the § 3553(a) factors weigh toward denying Defendant's motion. They note that the Sentencing Commission has identified child pornography as one of the most pernicious types of crime that exist. (See ECF 30 at 7). The Government further argues that the circumstances of Defendant's crimes show that he affirmatively created false identities online to ensnare children and manipulated children to send him child pornography. (Id. at 8). They contend that both specific and general deterrence is of paramount importance here where Defendant has engaged in child pornography multiple

10

times and there is a need to stunt the market for child pornography.[9] (Id. at 9).

The Court agrees with the Government and sees no reason to disturb the sentence imposed by Judge Simandle.  Specifically, Defendant committed his most recent child pornography offense while on federal supervised release for another child pornography offense.  18 U.S.C. § 3553(a)(1).  The nature of the crime of child pornography, which abuses a very vulnerable population, is no less serious than it was at the time of sentencing.  Id. at § 3553(a)(2)(A).  Further, the Court finds that deterrence of these kinds of crimes, both specific and general, is paramount where Defendant has committed child pornography offenses more than once and where there is an interest in extinguishing the market for such material.  Id. at § 3553(a)(2)(B).  Protecting the public from further crimes of Defendant also is in play here where Defendant has shown a

---

[9] They also argue that to the extent that Defendant is asking the Court to order the BOP to put him on home confinement rather than asking the Court to modify his sentence, the Court does not have the power to do so.  The Government is correct. United States v. Goldblatt, 2021 WL 287881, at *2 (D.N.J. Jan. 28, 2021) ("Although the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist 'extraordinary and compelling reasons' to reduce a sentence, the CARES Act did not grant the district court the power to order an inmate to home confinement."); Washington v. Warden Canaan USP, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]e agree with the District Court that whether to transfer an inmate to home confinement is a decision within the exclusive discretion of the BOP.").

11

penchant to continue engaging in child pornography after having already been imprisoned for such an offense.  Id. at § 3553(a)(2)(C).  The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motions for Compassionate Release (ECF 26, 28) will be denied.  An accompanying Order will issue.


Dated: April 14, 2022          s/   Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.